AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 24-MJ-260 |
| Cisco Cruzito Pinto | ) | |
| year of birth 1986 | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  September 13, 2023  in the county of  Rio Arriba  in the
  District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §§1153, 2241(c) & 2246(2)(A) | Aggravated Sexual Abuse in Indian Country |

This criminal complaint is based on these facts:

See attached affidavit, submitted by FBI Special Agent Travis Kosir and approved by AUSA Meg Tomlinson.

☑ Continued on the attached sheet.

*Complainant's signature*

FBI SA Travis Kosir
*Printed name and title*

Telephonically sworn and electronically signed.

Date: 2/22/2024

*Judge's signature*

City and state:  Farmington, New Mexico     B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>Cisco Cruzito Pinto,<br>year of birth 1986 | Case No. |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Travis Kosir, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is made in support of a Criminal Complaint and Arrest Warrant for Cisco Cruzito Pinto, (referred to herein as "PINTO"), year of birth 1986.

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), where I have been employed in that capacity since March 2016. I am currently assigned to the Albuquerque Division of the FBI, Farmington Resident Agency, and have primary investigative responsibility for crimes that occur in Indian Country, including violent crimes such as homicide, robbery, arson, aggravated assault, and sexual assault. My law enforcement experience includes, but is not limited to, collecting evidence, interviewing subjects and witnesses, writing affidavits for and executing search warrants, conducting surveillance, supervising cooperating sources, issuing subpoenas, analyzing phone records, and analyzing financial records. I am trained and have experience in the investigation of murder, assault, sex abuse, and other violent crimes committed in Indian Country.

1

## PURPOSE OF AFFIDAVIT

3. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A): Sexual Abuse of a Minor in Indian Country, (the "Target Offense") has been committed by PINTO.

4. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing probable cause to issue the requested Criminal Complaint and Arrest Warrant. Additionally, unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

## STATUTORY AUTHORITY

5. Title 18 U.S.C. § 2241, Aggravated sexual abuse, is provided in relevant part below:

   a. (a) BY FORCE OR THREAT.— "Whoever, in the special maritime and territorial jurisdiction of the United States or in a federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly causes another person to engage in a sexual act—

        i. (1) by using force against that person; or

        ii. (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;

or attempts to do so, shall be fined under the title, imprisoned for any term of years or life, or both.

…

(c) WITH CHILDREN.— Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life. If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.

## STATUTORY DEFINITIONS

6. Title 18 U.S.C. § 2246 provides definitions for pertinent terms used in Title 18 U.S.C. § 2241.

3

    a. "Sexual act" includes, in Paragraph (2)(A) "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight."

## TERRITORIAL JURISDICTION MATTERS

7.    Title 18 U.S.C. § 1153(a) - Offenses committed within Indian country provides the following definition for jurisdiction:

    a. "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

## PROBABLE CAUSE

1.    PINTO and the individual identified throughout this affidavit with initials D.D. and year of birth 2008 (referred to hereinafter as "JANE DOE") are both enrolled members of the Jicarilla Apache Nation Indian tribe, a federally recognized tribe. They are therefore Indians for purposes of Federal law.

2.    The crime described in this affidavit occurred at the residence of PINTO, within the exterior boundaries of the Jicarilla Apache Nation Indian Reservation, which is Indian Country for purposes of Federal law.

4

3.      On or about September 14, 2023, the Albuquerque Division, Farmington Resident Agency of the FBI was notified by the Jicarilla Apache Police Department ("JAPD") of a sexual assault of a minor which occurred on or about September 13, 2023. JAPD Sergeant David Valdez informed your affiant that he responded to a 911 emergency call made by an individual with initials S.P. and year of birth 1988 (referred to hereinafter as "WITNESS 1"). WITNESS 1 reported to JAPD that her niece JANE DOE disclosed sexual contact by PINTO, who is WITNESS 1's husband and JANE DOE's uncle.

4.      During an interview with JAPD Sgt Valdez on or about September 13, 2023, JANE DOE reported that PINTO came into her bedroom multiple times during the early morning hours and asked her questions. WITNESS 1 chased PINTO out of the room multiple times. Around 4:30am or 5:00am PINTO came into JANE DOE's room again, got on top of her, and started kissing and licking JANE DOE on the neck, arm, and next to her ear. JANE DOE attempted to hit PINTO, but PINTO grabbed her wrist and kept going. While on top of her, PINTO then put his penis into JANE DOE's vagina, causing JANE DOE to start crying. PINTO got up, put his clothes back on, and told JANE DOE not to tell anybody otherwise he would hit her. PINTO then left the bedroom while apologizing. PINTO went to the restroom to take a shower. While PINTO was in the shower, JANE DOE told WITNESS 1 what happened. WITNESS 1 instructed JANE DOE to go back into her bedroom and act like nothing happened. JANE DOE then heard PINTO get out of the restroom and put his clothes in the washing machine before heading back into his bedroom. After PINTO fell asleep, WITNESS 1 left the house to go call the police.

5.      On or about September 15, 2023, your affiant and JAPD Sergeant Valdez met with WITNESS 1. WITNESS 1 stated on or about the evening of September 12, 2023, she and

PINTO drove to Pagosa Springs, CO and had some drinks at a restaurant. WITNESS 1 did not want to drink so PINTO was drinking the drinks he ordered for her. PINTO was drunk by the time they drove back home around 3:00am the following morning. After arriving at their home, WITNESS 1 and PINTO stayed outside and talked for about an hour before going inside. WITNESS 1 tried to get PINTO to go to bed, but he kept getting up and said he was checking the front door or that he heard something. One of the times PINTO left their bedroom, WITNESS 1 found PINTO in JANE DOE's room. PINTO told WITNESS 1 they were just talking, but WITNESS 1 told PINTO the girls were trying to sleep and told him to get out of their room.

      6.      WITNESS 1 stated PINTO was acting strange so WITNESS 1 was going to try to stay awake until the kids woke up in the morning. However, WITNESS 1 fell asleep sometime after 4:00am. WITNESS 1 woke up sometime between 5:00am and 5:20am and noticed PINTO was not in bed next to her anymore. WITNESS 1 went into the hall to see where PINTO had gone and heard the shower running. JANE DOE then came out of her room crying and told WITNESS 1 that PINTO had touched JANE DOE. WITNESS 1 instructed JANE DOE to go back into her room and stay quiet. PINTO then came out of the bathroom and went into the laundry room and started washing some clothes. PINTO was staggering down the hall knocking paintings off the walls on his way to the laundry room. PINTO went back into his and WITNESS 1's bedroom and fell back asleep. WITNESS 1 then left the house and drove down the road to call 911. JAPD arrived and removed PINTO from the house. After the police and PINTO were gone, JANE DOE told WITNESS 1 that PINTO had sex with her. WITNESS 1 later retrieved the clothes PINTO had put in the washer and saw they were the same clothes PINTO was wearing when WITNESS 1 fell asleep. There were no other clothes in the washing machine.

7.      On or about September 15, 2023, your affiant and JAPD Sergeant Valdez conducted a custodial interview with PINTO while PINTO was in JAPD custody for tribal charges. PINTO was read his Miranda rights prior to the interview and agreed to speak with investigators. PINTO stated he and WITNESS 1 had gone to Pagosa Springs, CO the evening prior to his arrest to have a couple of drinks. PINTO had approximately four beers and one shot or mixed drink prior to the restaurant closing and the two of them returning to their home in Dulce, NM. PINTO remembered staying outside and talking with WITNESS 1 about plans for his birthday and their anniversary for about an hour before going inside. PINTO and WITNESS 1 went inside, PINTO went to the bathroom before going to sleep in his bedroom. PINTO was drunk and did not remember anything else until he was awoken by JAPD the following morning. PINTO remembered everything leading up to him going to bed. PINTO stated he did not have any physical contact with any of the seven kids who lived in the house during the evening or early morning prior to him being arrested by JAPD. Later in the interview, PINTO remembered going into JANE DOE's bedroom sometime during the night and asking her why she wasn't sleeping in the living room with one of the younger children who was sleeping there. PINTO was still drunk at that point and staggering. PINTO remembered falling onto JANE DOE, but nothing that would hurt her or otherwise be cause for WITNESS 1 to call the police. In addition to the three daughters PINTO and WITNESS 1 had together, PINTO stated he and WITNESS 1 had custody of three nieces and one nephew, one of which was JANE DOE who was 14 years old.

8.      On or about November 01, 2023, a Child/Adolescent Forensic Interview was conducted with JANE DOE. During this interview, JANE DOE provided similar details to those described above in her interview with JAPD Sgt Valdez on or about September 13, 2023. JANE

DOE also disclosed that PINTO "raped" her when she was seven or eight years old in a way that was similar to what she described occurring in September 2023.

9. On or about September 13, 2023, medical personnel at the Jicarilla Apache Health Care Center collected JANE DOE's clothing to be sent to the Sexual Assault Nurse Examiner ("SANE"). JAPD Sergeant Valdez also collected the bedding from the area JANE DOE identified as the location where PINTO sexually assaulted her.

10. On or about September 14, 2023, JANE DOE attended a SANE exam. During the exam, swabs of JANE DOE's vaginal area were taken.

11. On or about September 20, 2023, a search warrant was issued in the United States District Court, District of New Mexico (23mr1820) for the person of PINTO to collect a DNA buccal swab. The search warrant was executed that same day and a DNA sample in the form of a buccal swab was collected from PINTO. The DNA sample collected from PINTO and the swabs taken during the SANE exam of JANE DOE were subsequently sent to the FBI Laboratory for examination.

12. On or about November 28, 2023, the FBI Laboratory DNA Casework Unit completed a Laboratory Report documenting the results of the examination. The examination revealed male and female DNA on the swabs of JANE DOE's mons pubis/outer labia majora. The female DNA was found to belong to JANE DOE. Comparison of the male DNA obtained from the swabs of JANE DOE's mons pubis/outer labia majora to PINTO's DNA provided very strong support for inclusion of PINTO as the male contributor. Specifically, "The DNA results from [mons pubis/outer labia majora swabs] are 150 million times more likely if [JANE DOE] and PINTO are contributors than if [JANE DOE] and an unknown, unrelated person are contributors."

13. JANE DOE was 14 years old at the time of the reported incident on or about September 13, 2023.

## CONCLUSION

6. Based on my training, experience, and the facts as set forth in this affidavit, I submit that there is probable cause to believe PINTO has committed a violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A): Aggravated Sexual Abuse in Indian Country.

7. I therefore request that the attached Criminal Complaint and Arrest Warrant be issued authorizing the arrest of PINTO.

This affidavit was reviewed and approved for legal sufficiency by District of New Mexico Assistant United States Attorney Meg Tomlinson.

Respectfully submitted,

_____

Travis Kosir

Special Agent

Federal Bureau of Investigation

Sworn telephonically, signed remotely, and transmitted by email this __22nd__ day of February, 2024.

B. Paul Briones

UNITED STATES MAGISTRATE JUDGE

9